FILED
2021 Jan-21  AM 10:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| PAMELA STAFFORD, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:20-cv-00340-SGC |
| | ) | |
| CITY OF ARGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION[1]

This case arises out of the fatal shooting of a dog owned by the plaintiffs, Pamela Stafford and Matthew Shaw.  Pending before the undersigned is a renewed motion to dismiss filed by the defendants, the City of Argo and R. Hughes, an officer with the Argo Police Department who the plaintiffs sue in his individual capacity only.  (Doc. 26).  For the reasons discussed below, the defendants' motion is due to be granted, and this action is due to be dismissed.

## I.    Allegations of Amended Complaint

The plaintiffs reside within the city limits of Argo, Alabama.  (Doc. 21 at ¶ 5).  On September 13, 2019, the plaintiffs' dog escaped from a harness that tethered her to a tree in the plaintiffs' front yard.  (*Id.* at ¶ 7).  While Stafford was not home

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Doc. 23).

and was unaware the dog had escaped, Shaw noticed the dog's absence and left the property to search for her.  (*Id.* at ¶ 8).  In the meantime, a neighbor's guest saw the plaintiffs' dog roaming free and contacted the Argo Police Department to report the observation.  (*Id.* at ¶¶ 7, 9).  Officer Hughes responded to the location from which the neighbor's guest made the report and then proceeded to the plaintiffs' residence.  (*Id.* at ¶¶ 10, 11).  According to the plaintiffs, Officer Hughes had no plan or equipment to capture or restrain their dog with less-than-lethal force.  (*Id.* at ¶ 11).

Officer Hughes walked up the steps to the plaintiffs' front porch and knocked on their unlocked screen door.  (*Id.* at ¶ 12).  At this time, the plaintiffs' dog came around the side of the house, walked to the bottom of the steps leading up to the front porch, and began barking at Officer Hughes.  (*Id.* at ¶ 13).  Officer Hughes then shot the plaintiffs' dog three times – once between the eyes, once on the left side of the neck, and once on the right side of the thorax – resulting in the dog's death.  (*Id.* at ¶ 14).  Officer Hughes designated the plaintiffs' property a crime scene, prohibited anyone (including the plaintiffs) from entering, and completed an investigation.  (*Id.* at ¶ 15).  At Officer Hughes' request, Shaw brought the plaintiffs' dog to a veterinarian to be decapitated and inspected for rabies.  (*Id.* at ¶ 16).  The plaintiffs allege that as the result of this incident they have suffered and continue to suffer emotional distress and have lost the enjoyment of their pet and, due to the location of their pet's death, their real property.  (*Id.* at ¶ 17).

2

The plaintiffs further allege the City of Argo was aware of the large dog population within the city limits and the likelihood police officers frequently would encounter dogs and that is was highly predictable an officer who did not know how to handle dog encounters would violate citizens' constitutional rights.  (*Id.* at ¶¶ 23-24).  According to the plaintiffs, the City of Argo nonetheless adopted a policy of inadequate training and failed to adopt necessary policies.  (*Id.* at ¶¶ 24-25).

Based on the foregoing allegations, the plaintiffs claim (1) Officer Hughes unconstitutionally seized their dog without due process in violation of the Fourth and Fourteenth Amendments to the United States Constitution; (2) the City of Argo is responsible for these constitutional violations because it failed to train its police officers adequately regarding the appropriate way to respond to a dog encounter; (3) Officer Hughes intentionally and unlawfully interfered with the plaintiffs' personal property (i.e., their dog), in violation of Ala. Code. § 6-5-262; (4) Officer Hughes committed negligence *per se*, for which the City of Argo also is liable under the doctrine of *respondeat superior*; (5) Officer Hughes committed simple negligence, for which the City of Argo also is liable under the doctrine of *respondeat superior;* and (6) Officer Hughes committed the tort of outrage, for which the City of Argo also is liable under the doctrine of *respondeat superior*.[2]

---

[2] The plaintiffs first and second claims are asserted through 42 U.S.C. § 1983.

The defendants argue Officer Hughes is entitled to qualified immunity with respect to the federal constitutional claims asserted against him and that the plaintiffs have failed to state a plausible failure-to-train claim against the City of Argo. (Doc. 27).[3] Accordingly, they seek dismissal of the amended complaint pursuant to Rule 12(b)(6) of the *Federal Rules of Civil Procedure*.

## II.    Standard of Review

Rule 12(b)(6) must be considered against the backdrop of Rule 8(a)(2) of the *Federal Rules of Civil Procedure*.  Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Twombly*, 550 U.S. at 555).  "[L]abels and conclusions," "a formulaic recitation of the elements of a cause of action," and "naked assertion[s] devoid of further factual

---

[3] The defendants also make substantive arguments for dismissal of the state law claims asserted against them.  (Doc. 27).  Because the federal claims are due to be dismissed pursuant to Rule 12(b)(6), the undersigned declines to exercise supplemental jurisdiction over the state law claims and, therefore, does not address in greater detail the latter claims or the arguments asserted by the defendants with respect to those claims.

enhancement" are insufficient.  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (internal quotation marks omitted).

To survive a motion to dismiss for failure to state a claim on which relief may be granted brought pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citing *Twombly*, 550 U.S. at 556).

## III.    Discussion

### A.    Section 1983 Claims Against Officer Hughes

Section 1983 provides a cause of action for the deprivation of a federal statutory or constitutional right by a person acting under color of state law.  *See* 42 U.S.C. § 1983.  However, "[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known."  *Andujar v. Rodriguez*, 486 F.3d 1199, 1202 (11th Cir. 2007) (internal quotation marks omitted).  "The qualified immunity

standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Coffin v. Brandau*, 642 F.3d 999, 1017 (11th Cir. 2011) (internal quotation marks omitted). "This accommodation for reasonable error exists because officials should not err always on the side of caution because they fear being sued." *Id.* at 1018 (internal quotation marks omitted).

"An official asserting the affirmative defense of qualified immunity must initially establish that he was acting within his discretionary authority." *Skop v. City of Atlanta, Georgia*, 485 F.3d 1130, 1136 (11th Cir. 2007). "If the official was acting within the scope of his discretionary authority . . . the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity." *Id.* at 1136-37. "To overcome qualified immunity, the plaintiff must satisfy a two prong test; he must show that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004).

"Because qualified immunity is a defense not only from liability, but also from suit, it is important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted). "It is therefore appropriate for a district court to grant the defense of qualified immunity at the motion to dismiss

stage if the complaint fails to allege the violation of a clearly established constitutional right [against an official who was acting within his discretionary authority]."  *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) (internal quotation marks omitted).

### 1.    Officer Hughes Was Acting Within His Discretionary Authority

In determining whether a government official was acting within his discretionary authority, a court considers whether the official "was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize."  *Holloman ex rel. Holloman*, 370 F.3d at 1265.  "In applying each prong of this test, [a court] look[s] to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances."  *Id.* at 1266; *see also Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998) ("The inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act.  Framed that way, the inquiry is no more than an 'untenable' tautology.").  "Put another way, to pass the first step of this discretionary function test for qualified immunity, the defendant must have been performing a function that, *but for* the alleged constitutional infirmity, would have fallen with[in] his

legitimate job description." *Holloman ex rel. Holloman*, 370 F.3d at 1266 (emphasis in original).  A court must, however, "be sure not to characterize and assess the defendant's act at too high a level of generality."  *Id.* (explaining characterization of action at high level of abstraction makes it impossible to determine whether official was truly acting within proper scope of job-related activities).  For example,

> [i]n considering whether an act of allegedly excessive force fell within a police officer's duties . . . [a court] do[es] not ask whether police have the right to use *excessive* force.  [It] also do[es] not immediately jump to a high level of generality and ask whether police are responsible for enforcing the law or promoting the public interest.  [It] instead ask[s] whether they have the power to attempt to effectuate arrests.

*Id.* (citing *Lee*, 284 F.3d at 1194).

Applying this test to the facts at hand, it is clear the conduct challenged by the plaintiffs occurred within the performance of Officer Hughes' job-related functions through means within his power to utilize.[4]  For the purpose of protecting its citizens, the City of Argo requires that dogs be kept under restraint and not be allowed to run at large, *see* Argo, Ala., Ordinance 2019-03-25 (Mar. 25, 2019),[5] and it is axiomatic that a core function of local law enforcement officers is to respond to reports suggesting violations of local ordinances implicating public safety.  Moreover, under

---

[4] The plaintiffs do not argue otherwise.

[5] The ordinance is available at https://www.cityofargo.org/wp-content/uploads/2019/11/ORDINANCE-NO-2019-03-25-ANIMALS.pdf (last visited Jan. 13, 2021).

appropriate circumstances, deadly force is among the tools an officer may use in the course of performing his job.

Because Officer Hughes has demonstrated he was acting within his discretionary authority when the events at issue transpired, the burden shifts to the plaintiffs to demonstrate (1) Officer Hughes violated their constitutional rights, and (2) these rights were clearly established at the time of the alleged violation. "Although the lower federal courts were once required to consider the first prong before the second, they are now 'permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).  Because the undersigned readily concludes the constitutional rights the plaintiffs allege Officer Hughes violated were not clearly established at the time of the alleged violation, the qualified immunity analysis begins and ends with the second prong.

### 2. Officers Hughes Did Not Violate Any Clearly Established Constitutional Rights

"*[F]air and clear notice* to government officials is the cornerstone of qualified immunity."  *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002) (internal quotation marks omitted) (emphasis in original).  " 'The relevant dispositive inquiry

in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Bashir v. Rockdale Cnty., Georgia*, 445 F.3d 1323, 1330 (11th Cir. 2006) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Id.* (quoting *Saucier*, 533 U.S. at 202); *see also Wilson v. Layne*, 526 U.S. 603, 615 (1999) ("[T]he right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established."); *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) (noting the Supreme Court has repeatedly told lower courts not to define clearly established law at a high level of generality).

The Eleventh Circuit has articulated three ways in which fair and clear notice may be given. *Corbitt*, 929 F.3d at 1312. First, a "materially similar case [that] has already been decided" may provide the requisite notice. *Id.* (internal quotation marks omitted). "This category consists of cases where judicial precedents are tied to particularized facts." *Loftus v. Clark-Moore*, 690 F.3d 1200, 1205 (11th Cir. 2012). In determining whether a materially similar case clearly establishes a constitutional right, the Eleventh Circuit has instructed courts within its bounds to look only to binding precedent – that is decisions emanating from the United States Supreme Court, the Eleventh Circuit itself, and the highest court of the relevant state (here, the Alabama Supreme Court). *Echols v. Lawton*, 913 F.3d 1313, 1324 (11th

Cir. 2019).   Second, a "broader, clearly established principle" not tied to particularized facts may provide the requisite notice.   *Corbitt*, 929 F.3d at 1312 (internal quotation marks omitted).   However, "[t]he principle must be established with obvious clarity by the case law so that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted."   *Id.* (internal quotation marks omitted).   Third, the facts of a particular case may "fit[] within the exception of conduct which so obviously violates the constitution that prior case law in unnecessary."   *Id.* (internal quotation marks omitted).   "This narrow category encompasses those situations where the official's conduct lies so obviously at the very core of what the relevant constitutional provision prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law."   *Echols*, 913 F.3d at 1325 (internal quotation marks omitted).   "Notwithstanding the availability of these three independent showings, [the Eleventh Circuit] has noted on several occasions that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant."   *Corbitt*, 929 F.3d at 1312 (internal quotation marks omitted).   "[Eleventh Circuit] case law has made clear that 'obvious clarity' cases will be rare."   *Coffin*, 642 F.3d at 1015.

Guided by the foregoing, the undersigned addresses below why the plaintiffs have failed to allege the violation of a clearly established federal constitutional right

by Officer Hughes, as a consequence of which Officer Hughes is entitled to qualified immunity.

> a.   **Any Fourth Amendment Right Prohibiting Officer Hughes' Conduct Is Not Clearly Established in the Eleventh Circuit**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amd. IV.  Every circuit court that has addressed the issue has concluded a pet dog is an "effect[]" and the shooting of a pet dog by a law enforcement officer is a "seizure[]," such that the shooting is unconstitutional unless reasonable.  *See Maldonado v. Fontanes*, 568 F.3d 263, 270-71 (1st Cir. 2009); *Carroll v. Cnty. of Monroe*, 712 F.3d 649, 651 (2d Cir. 2013); *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 210 (3d Cir. 2001); *Altman v. City of High Point, North Carolina*, 330 F.3d 194, 196, 200-205 (4th Cir. 2003); *Jones v. Lopez*, 689 F. App'x 337, 339 (5th Cir. 2017); *Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 567 (6th Cir. 2016); *Viilo v. Eyre*, 547 F.3d 707, 710 (7th Cir. 2008); *Lesher v. Reed*, 12 F.3d 148, 150-51 (8th Cir. 1994); *Fuller v. Vines*, 36 F.3d 65, 68 (9th Cir. 1994), *overruled on other grounds by Robinson v. Solano Cnty.*, 278 F. 3d 1007 (9th Cir. 2002); *Mayfield v. Bethards*, 826 F.3d 1252, 1256 (10th Cir. 2016); *Robinson v. Pezzat*, 818 F.3d 1, 7-8 (D.C. Cir. 2016).  Additionally, district courts within this federal judicial circuit have addressed the issue, reaching the same conclusion as the circuit courts cited

above.  *See Davis v. Clayton*, 2018 WL 3475438, at *4-5 (N.D. Ala. July 19, 2018);

*McLeod v. Dukes*, 2018 WL 5928368, at *13 (M.D. Ga. Nov. 13, 2018); *Chastang*

*v. Levy*, 319 F. Supp. 3d 1244, 1254 (M.D. Fla. 2018); *Esterson v. Broward Cnty.*

*Sheriff's Dep't*, 2010 WL 4614725, at *3 (S.D. Fla. Nov. 4, 2010).[6]  However, the

Eleventh Circuit is not among the circuit courts that have addressed the issue, and

the United States Supreme Court and the Alabama Supreme Court have not

addressed the issue, either.

Some circuit courts have held the weight of authority from other jurisdictions

provided officers with adequate notice it would be unconstitutional to shoot a pet

dog absent a governmental interest justifying the intrusion.  *See Maldonado*, 568

F.3d at 271 (noting three federal circuit courts had addressed the issue); *Brown*, 844

F.3d at 566-67 (noting seven federal circuit courts had addressed the issue); *Viilo*,

547 F.3d at 710-11 (noting Third Circuit had addressed issue); *Mayfield*, 826 F.3d

at 1259 (noting seven federal circuit courts had addressed issue).  In at least some of

these circuits, the law of qualified immunity expressly sanctions the use of out-of-

circuit, non-binding authority to establish such immunity.  *See Brown*, 844 F.3d at

566-67 (noting Sixth Circuit law permits reference to decisions of other circuits in

determining whether a constitutional right is clearly established); *Mayfield*, 826 F.3d

---

[6] Additionally, each of these district courts either concluded the facts before it did not show the violation of a clearly established constitutional right or did not reach the second prong of the qualified immunity analysis.

at 1259 (noting a constitutional right is clearly established under Tenth Circuit law "if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains") (internal quotation marks omitted).

Additionally, the Supreme Court has stated that in the absence of "'controlling authority,'" a " ' "robust consensus of cases of persuasive authority"'" may provide fair and clear notice particular conduct violates the Constitution. *D.C. v. Wesby*, 138 S. Ct. 577, 589-90 (2018) (quoting *al-Kidd*, 563 U.S. at 741-42) (in turn quoting *Wilson*, 526 U.S. at 617). The Eleventh Circuit, in *dicta*, has repeated this statement. *See Glasscox v. Argo, City of*, 903 F.3d 1207, 1217 (11th Cir. 2018) ("To be clearly established, a legal principle must be . . . 'dictated by controlling authority or a robust consensus of cases of persuasive authority.'") (quoting *Wesby*).

However, the Eleventh Circuit repeatedly has instructed district courts within its bounds that only decisions issued by the United States Supreme Court, the Eleventh Circuit itself, and the highest court of the relevant state may establish qualified immunity. *See Jenkins by Hall v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826 n.4 (11th Cir. 1997) ("In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose."); *Amnesty Int'l, USA v. Battle*, 559 F.3d 1170, 1184 (11th Cir. 2009) ("In this Circuit, only the caselaw of the Supreme Court, the Eleventh Circuit or the law of

14

the highest court of the state where the events took place . . . can 'clearly establish' constitutional rights."); *Coffin*, 642 F.3d at 1013 ("Our Court looks only to binding precedent – cases from the United States Supreme Court, the Eleventh Circuit, and the highest court of the state under which the claim arose – to determine whether the right in question was clearly established at the time of the violation."); *Echols*, 913 F.3d at 1324 ("We look only to binding precedent at the time of the challenged conduct – that is the decisions of  the Supreme Court, the Eleventh Circuit, or the highest court of the state.") (internal quotation marks omitted).  Consistent with this instruction, the Eleventh Circuit has rejected plaintiffs' arguments out-of-circuit decisions provided government officials fair and clear notice their conduct was unconstitutional.  *See Loftus*, 690 F.3d at 1206-07 (rejecting plaintiff's attempt to rely on out-of-circuit decisions to establish qualified immunity); *Gilmore v. Hodges*, 738 F.3d 266, 277 (11th Cir. 2013) (same); *Echols*, 913 F.3d at 1324 (same). Because the United States Supreme Court, Eleventh Circuit, and Alabama Supreme Court have not yet addressed the question whether the fatal shooting of a pet dog constitutes a Fourth Amendment violation unless reasonable, the plaintiffs cannot show a materially similar case provided Officer Hughes fair and clear notice his conduct was unconstitutional.

The plaintiffs cannot show a broader, clearly established principle provided the requisite notice to Officer Hughes, either.  The Supreme Court "has treated the

term 'effects' as being synonymous with personal property," *Altman*, 330 F.3d at 202 (citing *United States v. Place*, 462 U.S. 696 (1983); *Bond v. United States*, 529 U.S. 334 (2000); *United States v. Jacobsen*, 466 U.S. 109 (1984)), and dogs have long been considered personal property under Alabama law, *see Louisville & N.R. Co. v. Fitzpatrick*, 129 Ala. 322, 324-25 (1901) (holding owner of dog killed by defendant's negligent operation of rail engine and cars could recover for destruction of his "property"); *S. Ry. Co. v. Harris*, 93 So. 470, 470 (Ala. 1922) ("A dog is personal property."); *Hogan v. Hogan*, 199 So. 3d 50, 56 (Ala. Civ. App. 2015) ("Alabama has long held that dogs are property.").  Moreover, the Supreme Court has held "[a] 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property," such as by destruction of the property.  *Jacobsen*, 466 U.S. at 113, 124-24.

In *Brown*, the Third Circuit held the right at issue was clearly established by Pennsylvania law's treatment of dogs as personal property and the general principles articulated in *Jacobsen* and *Place*.  269 F.3d at 211.  However, Eleventh Circuit precedent, which is the controlling authority this court must follow, requires a contrary result.  As noted, cases where a broader, clearly established principle not tied to particularized facts satisfies the second prong of the qualified immunity analysis are rare.  *Coffin*, 642 F.3d at 1015.  "[The Eleventh Circuit] ha[s] held time and again that clearly established general principles of law will seldom if ever suffice

to strip a defendant of qualified immunity." *Harbert Int'l, Inc.*, 157 F.3d at 1284. "A reasonable official's awareness of the existence of an abstract right, such as a right to be free of excessive force, does not equate to knowledge that *his* conduct infringes the right." *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997); *see also Jones v. Fransen*, 857 F.3d 843, 854-55 (11th Cir. 2017) (holding general principle prohibiting use of excessive force during an arrest did not provide officers with clear notice the force they deployed under the circumstances they faced was unconstitutional). Moreover, "[the Eleventh Circuit] ha[s] stated time and again that 'officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases." *Gilmore*, 738 F.3d at 278.

Applying this guidance, the general principles discussed above are too general and abstract to have provided Officer Hughes with fair and clear notice his conduct violated the plaintiffs' Fourth Amendment rights. The undersigned cannot conclude every objectively reasonable officer confronted by a loose, barking dog would string together these general principles and understand that shooting the dog would be a Fourth Amendment violation. Additionally, the undersigned notes "a clearly established violation of state law cannot put an official on notice that his conduct would also violate the Constitution because section 1983 protects only against violations of federally protected rights." *Echols*, 913 F.3d at 1324 (internal quotation marks omitted). "[The Eleventh Circuit] ha[s] stressed in [its] [] cases that

Section 1983 must not be used as a font of tort law to convert state tort claims into federal causes of action." *Peterson v. Baker*, 504 F.3d 1331, 1336 (11th Cir. 2007) (internal quotation marks omitted).  Therefore, while it may be clear the killing of a pet dog gives rise to a tort claim under Alabama law, that does nothing to establish the existence of a clear federal constitutional claim.

Finally, Officer Hughes' conduct does not fall within the narrow category of cases involving conduct so obviously violative of the Fourth Amendment that case law is unnecessary to provide notice of the unconstitutionality.  *Cf. Lee*, 284 F.3d at 1198-1200 (holding police officer's conduct – taking fully-secured and handcuffed arrestee to back of car and slamming her head against trunk – was obvious constitutional violation falling within narrow category of cases for which pre-existing case law is unnecessary to provide notice of unconstitutionality); *Priester v. City of Riviera Beach*, 208 F.3d 919, 927 (11th Cir. 2000) (holding the same with respect to police officer who ordered and allowed his dog to attack and bite the fully-subdued plaintiff for at least two minutes and threated to kill plaintiff when plaintiff kicked dog in effort to resist unprovoked attack).  The plaintiffs' allegations, accepted as true, do not come close to the depraved conduct held to constitute obvious constitutional violations in *Lee* and *Priester*.  *See Gilmore*, 738 F.3d at 279-80 (holding failure to provide inmate with hearing aid batteries came nowhere close to "depraved, inhumane treatment" at issue in *Lee* and *Priester*).

For the foregoing reasons, Officer Hughes is entitled to qualified immunity with respect to the plaintiffs' Fourth Amendment claim, which is due to be dismissed with prejudice pursuant to Rule 12(b)(6).

> **b.   The Plaintiffs Have Failed to Demonstrate the Violation of a Clearly Established Right Under the Fourteenth Amendment**

The Fourteenth Amendment prohibits a state from depriving a citizen of his property without affording him due process of law.  U.S. CONST. amd. XIV, § 1. "The Due Process Clause provides two different kinds of constitutional protections: procedural due process and substantive due process." *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2018).  "A violation of either of these two kinds of protection may form the basis for a suit under § 1983." *Id.*  The amended complaint does not make clear whether the plaintiffs assert a procedural due process claim, a substantive due process claim, or both.  The plaintiffs' response to the defendants' renewed motion to dismiss does nothing to clarify the issue, failing to address their due process claim(s) beyond merely referencing "due process of law" and the "Fourteenth Amendment," make any argument with respect to their due process claim(s), or cite any authority that would demonstrate the facts alleged in their amended complaint, taken as true, give rise to the violation of clearly established procedural or substantive due process rights.  Accordingly, Officer Hughes is

entitled to qualified immunity with respect to the plaintiffs' Fourteenth Amendment claim, which is due to be dismissed with prejudice pursuant to Rule 12(b)(6).

**B.     Section 1983 Claim Against City of Argo**

Although the United States Supreme Court has held a municipality is subject to liability under § 1983, such liability cannot be based on the theory of *respondeat superior. Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-94 (1978). A municipality is subject to § 1983 liability only if a policy or custom of the municipality causes a constitutional violation. *Id.* at 694. Under "limited circumstances," a municipality's failure to train may constitute a policy or custom giving rise to § 1983 liability. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989); *see also Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."); *Davis v. City of Montgomery*, 220 F. Supp. 3d 1275, 1282 (M.D. Ala. 2016) ("This third line of so-called failure-to-train liability is especially rare."). This is where a failure to train "amounts to deliberate indifference to the rights of [a municipality's inhabitants]." *City of Canton*, 489 U.S. at 388.

"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61 (internal quotation marks omitted). "Thus, when city policymakers are on actual or constructive notice that a particular omission in their

training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id.* "The city's 'policy of inaction' in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution." *Id.* at 61-62 (internal quotation marks omitted). The Eleventh Circuit "repeatedly has held that without notice of a need to train or supervise in a particular area a municipality is not liable as a matter of law for any failure to train or supervise." *Gold v. City of Miami*, 151 F.3d 1346, 1351 (11th Cir. 1998).

A city may be put on notice of a need to train in two ways. *Lewis v. City of W. Palm Beach, Florida*, 561 F.3d 1288, 1293 (11th Cir. 2009). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (internal quotation marks omitted). "[I]f the city is aware that a pattern of constitutional violations exists, and nevertheless fails to provide adequate training, it is considered to be deliberately indifferent." *Lewis*, 561 F.3d at 1293.

However, the Supreme Court has "left open the possibility that, in a narrow range of circumstances, a pattern of similar violations might not be necessary to show deliberate indifference." *Connick*, 563 U.S. at 63 (internal quotation marks omitted) (discussing *Canton*). This is where "the likelihood for constitutional

violation is so high that the need for training would be obvious." *Lewis*, 561 F.3d at 1293.

> [In *Canton*,] [t]he Court posed the hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force.  Given the known frequency with which police attempt to arrest fleeing felons and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights, the Court theorized that a city's decision not to train the officers about constitutional limits on the use of deadly force could reflect the city's deliberate indifference to the highly predictable consequence, namely, violations of constitutional rights.

*Connick*, 563 U.S. at 64-63 (internal quotations marks and citation omitted).  The so-called "single-incident liability exception" "is predicated on (1) the likelihood that a [municipal employee] will be confronted with a specific situation and (2) the predictability that [the employee], when confronted with that situation, will violate a person's constitutional rights."  *Davis*, 220 F. Supp. 3d at 1284.  Neither the Supreme Court nor the Eleventh Circuit has ever applied the single-incident liability exception.  *Vielma v. Gruler*, 808 F. App'x 872, 883 (2020).

Implicit in the foregoing discussion is that absent the violation of a constitutional right by a municipal employee, a municipality cannot be liable for failing to train the employee.  *See Vineyard v. Cnty. of Murray, Georgia*, 990 F.2d 1207, 1211 (11th Cir. 1993) ("Only when it is clear that a violation of specific rights

has occurred can the question of § 1983 municipal liability for the injury arise."); *Rooney v. Watson*, 101 F.3d 1378, 1381, 1381 n.2 (11th Cir. 1996) (holding plaintiffs could not maintain § 1983 claim against county based on either unconstitutional custom or policy theory or failure-to-train theory where court had determined plaintiffs suffered no underlying constitutional deprivation).   Above, the undersigned declined to address whether the amended complaint plausibly alleges the violation of a constitutional right by Officer Hughes, instead exercising the discretion to proceed under the "clearly established" prong of the qualified immunity analysis.   Similarly, it is unnecessary to address the question in the context of the plaintiffs' § 1983 claim against the City of Argo because, even assuming a constitutional violation by Officer Hughes, the amended complaint fails to plausibly allege the City was responsible for the violation.

First, the plaintiffs do not allege a pattern of similar constitutional violations in their amended complaint and admit as much in their response to the defendants' renewed motion to dismiss.   Second, the allegations included in the amended complaint that fairly could be construed as an attempt to proceed under the single-incident liability exception are conclusory.   More specifically, the allegations that the City of Argo was aware of the large dog population within the city limits and the likelihood police officers would frequently encounter dogs, and that it was highly predictable an officer who did not know how to handle dog encounters would violate

citizens' constitutional rights, are naked assertions lacking factual enhancement. *See Davis*, 220 F. Supp. 3d at 1284-85 (holding the same with respect to allegations City of Montgomery was aware police officers often encountered citizens with hearing and/or speech disabilities and that it was highly predictable an officer who did not know how to interact with such citizens would violate their constitutional rights). Likewise, the allegations the City of Argo adopted a policy of inadequate training and failed to adopt necessary policies are nothing more than legal conclusions. *See Whitaker v. Miami-Dade Cnty.*, 126 F. Supp. 3d 1313, 1327 (S.D. Fla. 2015) (holding allegations Miami-Dade County failed to adequately train its police officers in techniques designed to prevent encounters with potential suspects from becoming volatile or dangerous were not well-pleaded facts but, rather, conclusory assertions). Absent any factual allegations at least as to why it was highly predictable an officer who did not know how to handle dog encounters would violate citizens' constitutional rights or what training would have been adequate to equip an officer with this knowledge, the type of municipal liability hypothesized by the Supreme Court in *Canton* cannot reasonably be inferred from the amended complaint. *See Vielma*, 808 F. App'x at 883 (holding the same where plaintiffs did not provide any specifics as to what they contended would have been constitutionally adequate training for police officers who respond to a mass shooting at a nightclub or why the need for that very specific training would have been obvious to the City of Orlando).

The plaintiffs' primary argument is that their amended complaint creates a reasonable expectation discovery – specifically, discovery regarding the training, if any, the City of Argo provides police officers regarding dog encounters – will reveal evidence that supports their failure-to-train claim.  However, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.  Because conclusions are all the plaintiffs allege in support of their failure-to-train claim against the City of Argo, the plaintiffs are not entitled to discovery on the claim, which necessarily fails and is due to be dismissed with prejudice pursuant to Rule 12(b)(6).

### C.    State Law Claims

Because the § 1983 claims asserted against Officer Hughes and the City of Argo are due to be dismissed, the undersigned declines to exercise supplemental jurisdiction over the state law claims asserted against these defendants, pursuant to 28 U.S.C. § 1367(c)(3).  Subsection (a) of § 1367 permits a federal district court to exercise supplemental jurisdiction over state law claims that are so related to claims in an action over which it has original jurisdiction as to "form part of the same case or controversy under Article III of the United States Constitution."  § 1367(a). However, subsection (c)(3) of § 1367 permits a federal district court to decline the exercise of supplemental jurisdiction over a claim if it "has dismissed all claims over which it has original jurisdiction."  § 1367(c)(3).  When determining whether to

decline the exercise of supplemental jurisdiction under § 1367(c)(3), a court should consider judicial economy, convenience, fairness to litigants, and comity. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349-50 (1988). This case is in the early stages of litigation, such that the interests of fairness and judicial economy would not be disserved by declining the exercise of supplemental jurisdiction. Furthermore, comity suggests the Alabama courts should be allowed to decide claims arising under Alabama law. *See Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997) ("State courts, not federal courts, should be the final arbiters of state law."). Finally, the Eleventh Circuit has encouraged district courts to dismiss remaining state law claims when federal claims have been dismissed prior to trial. *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004). For these reasons, the state law claims asserted against the defendants are due to be dismissed without prejudice.[7]

## IV.   Conclusion

For the foregoing reasons, the defendants' motion to dismiss (Doc. 26) is due to be granted. Officer Hughes is entitled to qualified immunity with respect to the plaintiffs' Fourth and Fourteenth Amendment claims, which are due to be dismissed with prejudice pursuant to Rule 12(b)(6). Moreover, the failure-to-train claim

---

[7] Section 1367(d) tolls the statute of limitations for any claim asserted under § 1367(a) while the claim is pending and for a period of thirty days after it is dismissed, unless state law provides for a longer tolling period.  § 1367(d).

asserted against the City of Argo is due to be dismissed pursuant to Rule 12(b)(6) for failure to state a claim on which relief may be granted.[8]  Given the plaintiffs' federal claims are due to be dismissed, the undersigned declines to exercise supplemental jurisdiction over the plaintiffs' state law claims, which are due to be dismissed without prejudice.  A separate order will be entered.

**DONE** this 21st day of January, 2021.

Staci G. Cornelius
STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE

---

[8] The plaintiffs have not requested leave to further amend their complaint to state plausible federal claims against the defendants.  *See Daewoo v. Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) ("A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court.").